UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM DAWSON AND DEBRA DAWSON on behalf of themselves and their minor son L.D., and minor daughter, A.D., | No. 25-cv-1026 |
| Plaintiff, | **COMPLAINT AND JURY DEMAND** |
| -against- | |
| PATCHOGUE-MEDFORD SCHOOL DISTRICT, SOUTH OCEAN-MIDDLE SCHOOL, TIMOTHY PICIULLO, RYAN CRABTREE, and MARIA DEL PILAR ERDMAN, | |
| Defendants. | |

## INTRODUCTION

1.     Plaintiff L.D. was in the fifth grade when he approached his parents, Willam Dawson and Debra Dawson, about being bullied in school. This disclosure would mark the beginning of a fraught and traumatizing adolescence for L.D.

2.     Mr. and Mrs. Dawson also discovered that as a result of L.D. being bullied, their other child, A.D. was also being bullied.

3.     Mr. and Mrs. Dawson wanted what all parents want: for their children to be happy. They consulted experts and did their best to help both L.D. and A.D.

4.     During the last few years, while L.D. and A.D. have been students in the Patchogue-Medford School District (hereinafter the "District"), Mr. and Mrs. Dawson tried to engage teachers and administrators about the challenges L.D. and A.D. faced, and even submitted DASA incident reports.

5.      Unfortunately, as the years wore on, L.D.'s experience at South Ocean-Middle School (hereinafter the "School") became a living nightmare, which also negatively impacted A.D. experience at the School.

6.      L.D. and A.D experienced near-constant bullying and harassment. His family repeatedly filed formal written complaints against students. Yet the District continually failed to take the action necessary to protect L.D. and/or A.D.

7.      L.D. experienced persistent bullying at the hands of his peers and blatant insensitivity and indifference at the hands of his teachers. Peers physically assaulted him, took pictures of him while undressed and disseminating same, verbally abused him, and treated him like an outcast.

8.      Likewise, the District took little to no steps to ensure L.D.'s safety and wellbeing in this increasingly hostile environment. Despite valid findings of bullying, and situations that should have involved the police, or even implementing a viable safety plan, the District placed the onus of protecting L.D. on L.D. and his family. L.D. was forced to isolate himself to avoid bullying.

9.      Day by day, Mr. and Mrs. Dawson bore witness to the degradation of their child's once bright and hopeful spirit. L.D. started missing classes, avoiding the school bus and after school activities, experience eating difficulties, and experiencing heightened anxiety and depression.

10.     Similarly, A.D. was bullied, which was reported to the District and also nothing was done to implement the safety of A.D, who was also negatively affected by the actions of the bullying.

11.     Mrs. Dawson was even forced to quit her job with the District because she was told she was required to chose between the safety of her children and her job.

12.     L.D. suffered so tragically that he was brought to medical professionals and/or threatened self-harm on numerous occasions, including just prior to the 50-H Hearing required before this action was initiated.

13.     A.D. lacked the support of the District and staff so much so that when she sought to protect another student, who was actively engaging in self-harm, she was dismissed with statements that she "did not see what she thought she saw" despite the fact that A.D. saw another student actively engaging in self-harm.

14.     L.D. and A.D. should have felt nurtured, supported, and safe during these formative years of their lives. Instead, Defendants' callous disregard for the well-being of L.D. and A.D. resulted in years of terror at the hands of peers and staff.

15.     The actions of the District and staff have terrified and caused immeasurable harm upon the entire family, who have had to change how they interact with others, the District, and even each other.

16.     Defendants' failures are morally and legally inexcusable and render them liable under federal, state, and local law.

### JURISDICTION, VENUE, AND CONDITIONS PRECEDENT TO SUIT

17.     The Court has subject-matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1331 and 1343(a). The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

18.     Venue lies in the Eastern District of New York under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred herein.

19.     On May 1, 2024, Plaintiff served a notice of claim pursuant to Education Law § 3813 and General Municipal Law § 50-e upon the District by email to the District's counsel.

20.     More than thirty days have elapsed since the notice of claim was served, and payment thereof has been neglected or refused.

21.     On August 29, 2029, L.D. and Debra Dawson underwent an examination by oral questioning by the District's counsel relative to the allegations in the notice of claim.

22.     On September 18, 2029, A.D. and Willam Dawson underwent an examination by oral questioning by the District's counsel relative to the allegations in the notice of claim.

## PARTIES

23.     Plaintiff L.D. is 13 years old and appears in this action by and through his parents, William Dawson and Debra Dawson. L.D. was at all relevant times a student in the District.

24.     Plaintiff A.D. is 13 years old and appears in this action by and through her parents, William Dawson and Debra Dawson. L.D. was at all relevant times a student in the District.

25.     Plaintiff Debra Dawson is the mother of L.D. and A.D. She is also a former employee of the District.

26.     Plaintiff William Dawson is the father of L.D. and A.D.

27.     Defendant Patchogue-Medford School District is a public school district organized pursuant to Article 37 of the New York Education Law with its principal place of business at 241 S Ocean Ave, Patchogue NY. It is managed by a seven-member Board of Education ("BOE") pursuant to § 1804 of the New York Education Law.

28.     New York State's Dignity for All Students Act ("DASA") requires the BOE to "create a school environment that is free from harassment, bullying and discrimination." N.Y. Education Law § 13(1). Any school employee who witnesses or learns of harassment, bullying or discrimination is mandated to report such incidents to administrators. *Id.* § 13(1)(c). Upon receiving a report, school administrators are required to thoroughly investigate it, and if the report is substantiated, "take prompt actions reasonably calculated to end the harassment, bullying or discrimination, eliminate any hostile environment, create a more positive school culture and climate, prevent recurrence of the behavior, and ensure the safety of the student or students against whom such harassment, bullying or discrimination was directed." *Id*. § 13(1)(e). BOE is required to provide guidelines to be used in school training programs that are specifically designed to "raise the awareness and sensitivity of school employees to potential harassment, bullying and discrimination" and enable them to adequately prevent and respond to such incidents. *Id*. § 13(2)(a).

29.     The District is an "education program or activity receiving Federal financial assistance" as outlined in 20 U.S.C. § 1681(a).

30.     Defendant TIMOTHY PICIULLO is a District employee who, at all relevant times, served as the Principal of South Ocean-Middle School. Upon information and belief, under DASA, as the principal of South Ocean-Middle School, Defendant Piciullo reviewed and approved of the result his designees' investigations into all reported incidents of bias-based discrimination, harassment, intimidation and bullying of L.D. and A.D. *See* N.Y. Education Law § 13(1)(d).

31.     Defendant MARIA DEL PILAR ERDMAN is a District employee who, at all relevant times, served as the Assistant Principal of South Ocean-Middle School. Upon information and belief, under DASA, as the Assistant principal of South Ocean-Middle

School, Defendant Del Pilar Erdman reviewed and approved the result of her designees'
investigations into all reported incidents of bias-based discrimination, harassment, intimidation
and bullying of L.D. and A.D. *See* N.Y. Education Law § 13(1)(d).

32.     Defendant RYAN CRABTREE, and is a DOE employee who, at all relevant
times, served as Dean at South Ocean-Middle School.

## JURY DEMAND

33.     Plaintiff demands a jury trial.

## FACTS

34.     L.D. and A.D. are twins, and since they were young have both been bright,
spirited, and talented children who has a positive and nurturing relationship with their
family.

35.     On or about November 7, 2022, two male students entered the boy's
bathroom while L.D. was using the facilities. Said male students (hereinafter "Bullies 5 &
6") then took pictures of L.D. while L.D. was using the bathroom in a private and sensitive
manner. The picture of L.D. depicted L.D. in a vulnerable position of being unclothed
(again using the bathroom) was then shared with other students over Snapchat. This
matter was reported to the District and the School, via email from William Dawson and
Debra Dawson, and a subsequent DASA incident report was generated by either the District
and/or the School. Initially the School denied the event claiming there was no proof. This
changed when the School District reviewed security footage, and therefore found in the
subsequent DASA finding, this was a founded event. However, the District failed to report
the matter to the police as the incident is not only unlawful (child pornography), but to
properly address the issue to prevent further and future bullying, and as a result the
bullying over this incident kept happening throughout the 2022-2023 school year, and
followed L.D. into the 2023-2024 school year.

36.    In or about January 2023 L.D. was bullied and called "Chuck E Boy" by his peers. This matter was report to Dean Annette Mroczkowski and Julissa Pagan, Social worker within about 2 days of the incident. The only response given was that the incident would be "investigated", but nothing was ever discussed about the situation again and no results of the alleged investigation was ever revealed.

37.    On or about October 24, 2023, claimants informed the District of two incidents that affected L.D. and A.D via a Dignity for All Students Act ("DASA") incident report.

A.    In DASA incident report 1: Claimants indicate that such behavior has been constant since 2022/2023 school year, and involves a female student aggressor (hereinafter "Bully 1"), who engaged in: (a) bullying, harassment or intimidation that involved physical aggression; (b) getting another person to hit or harm the student; (c) teasing, name-calling, making critical remarks, or threatening, in person or by other means; (d) demeaning and pointing inappropriate jokes towards victim; (e) making rude and/or threatening gestures; (f) spreading harmful rumors or gossip, (g) intimidating (bullying), extorting or exploiting; (h) electronic communications – text messages; (i) snap chat messages.

B.    In DASA incident report 2: Claimants indicated that on or about October 2, 2023 and again on or about October 23, 2023 male aggressor student (hereinafter "Bully 2") engages in: (a) bullying, harassment or intimidation that involved physical aggression; (b) teasing, name-calling, making critical remarks, or threatening, in person or by other means; (c) demeaning and pointing inappropriate jokes towards victim; (e) making rude and/or threatening gestures; (f) spreading harmful rumors or gossip, (g) intimidating (bullying), extorting or exploiting; (h) electronic communications – text messages; (i) snap chat messages. Said report

included that Bully 2 told L.D. and A.D. to "kill" themselves.

38.    On or about October 24, 2023, Bully 1 started a rumor that L.D. was "jerking off" in the bathroom, and began calling L.D. "Jerk Off boy." This resulted in other students similarly calling L.D. by this inappropriate name, and claiming that there was a video to support the underlying claim of L.D. "jerking off" in the bathroom. This incident was reported, via a phone call to Assistant Principal Erdman by Claimants. Ms. Erdman, as before simply responded with "we will investigate". Claimants heard nothing further of this "investigation" and upon information and belief, the police were not contacted about alleged child pornography video circulating.

39.    On or about December 15, 2023, the DASA investigation found that the complaints were founded. Yet, despite the claim that "bullying, harassment or intimidation are serious and will not be tolerated." As set forth on the DASA reporting form. The District and School allowed the bullying, harassment and intimidation to continue unchecked.

40.    On or about February 9, 2024, L.D. was engaged in a wrestling match. During the match Bully 1 attended the wrestling match with their friends. This individual then began taking pictures and taunting L.D. A.D. and Claimant Debra Dawson. L.D.'s sister, informed the Assistant Principal Erdman. Upon information and belief, Bully 1 was never disciplined about such situation.

41.    As a result of the foregoing, L.D.'s attendance at school went down, and his grades were negatively affected. Additionally, L.D.'s has suffered mentally, including having to be hospitalized due to the bullying and the lack of action by the District to address and stop said bullying. Additionally, L.D. personality has become increasingly negative and destructive within his family dynamic, because he cannot get away from the bullying, which has been fostered by the School District, by their lack of action.

42.    Currently L.D. suffers from anxiety and depression due to the constant bullying.

43.     Claimants have been advised, by the District, that L.D. will be held back not because of his grades, but due to his attendance. Said attendance issues are due to the bullying environment fostered by the District.

44.     Furthermore, attempts by L.D. to defend himself from bullying, resulted in the bullies not being disciplined, but L.D. receiving 2 days of in-school suspension and 3 days of out-of-school suspension. However, the suspension reports indicate that not only was L.D. defending himself, but when similar behavior is engaged in by other students, they receive different/better treatment. For example:

A. In or about September 2023, L.D. was given in-school suspension for throwing his lunch bag after being verbally and physically assaulted by Bully 3. The lunch bag never actually even touched Bully 3, despite Bully 3 actually hitting L.D. However, upon information and belief, Bully 3 was also given in-school suspension, which is better treatment for physically assaulting L.D.

B. In or about October 2023, Bully 2 swung at L.D. with a school book, and made physical contact with L.D. L.D. swung in defense, but made no contact and responded verbally. In frustration of the disparate treatment, L.D. when approached by the Dean of South Ocean, aggressively demanded that the Dean do their job. This was a clear indication and call for help by a suffering child who had been bullied nonstop. Upon information and belief, L.D. was the only one to be suspended.

C. In or about October 2023, L.D. was suspended for verbally abusive behavior, as he was trying to defend himself from Bully 2. Yet, when other students are verbally abusive to L.D. they are not similarly suspended.

45.	On or about February 7, 2024, Bully 1 approached L.D. in the hallway and called him a "fat fucking fagot", at about 1:45 PM L.D. immediately went to the South Ocean nurse upset and reported the incident. Thereafter, the South Ocean, via Dean Crabtree waited until L.D.'s last period (about an hour later) to discuss the situation, which could also be considered a Hate crime. However, Dean Crabtree did not pull Bully 1 out of her class to discuss the situation. Upon information and belief, Bully 1 was not questioned about the situation for several days, and possibly at all. As a result of anxiety due to the bullying situation, L.D. became ill and missed most of school the next day.

46.	Upon information and belief, L.D.'s independent Mental Health Counselor has tried to intercede on behalf of L.D. Said independent Mental Health Counselor called Principal Piciullo to express concern of L.D.'s well-being.  Upon information and belief, the independent Mental Health Counselor was met with adversity and little consideration and fought to have a meeting with the principal. Upon information and belief, Principal Piciullo claimed that L.D. was not bullied, just that L.D. was being subjected to a series of "conflicts."

47.	Furthermore, as a child with recognized disabilities, L.D. being constantly subjected to bullying, harassment and intimidation is a violation of his rights.

48.	As a result of the treatment, he has been subjected to, the Suffolk County Courts have found L.D. to pose a serious risk to himself and/or others, and at times have had to hospitalize L.D. This could and should have been avoided if South Ocean and the School District protected L.D. as it is required to do under New York State Law.

49.	On or about December 9, 2023, on or about December 11, 2023, and on or about February 2, 2024, Bully I made harassing TikTok videos about L.D. and/or A.D.

50.	On or about January 12, 2024, a female aggressor student (hereinafter "Bully 4") contacts A.D. for the sole purpose of harassment. A.D. responded that she would be informing the District and/or School about such behavior. Upon information and belief, such interaction was reported, but Bully 4 has not, upon information and belief, been

subjected to any discipline.

51.     Upon further information and belief, Bully 2, as well as 2 other students do not live in the School, yet they have been attending classes in the District. It is believed that the District is aware that these students have lied about residency in order to attend the District, and as a result, their continued unlawful attendance in the District has fostered the bullying and harassment that L.D. and A.D. have been subjected to over the course of two school years.

52.     During the week of February 5, 2024, a social media post went around of a Snap Chat story that stated that a specific person and everyone "hates A.D." and everyone hates Abigail.  Said situation was reported to the School, via Dean Crabtree and Shaun Harris, Wrestling Coach, but upon information and belief, no one was ever disciplined.

53.     South Ocean was also advised about incidents where Bully 1 has attached Claimant Debra Dawson in furtherance of a bullying campaign against L.D. and A.D. Bully 1 had made a series of TikTok messages and text messages (using aliases) claiming that Claimant Debra Dawson had "whipped" L.D. for eating. Claimant Debra Dawson referred these matters to Human Resources, as Claimant Debra Dawson was an employee of the School District at that time.

54.     Despite reporting the incidents to the South Ocean and the School District, Claimant Debra Dawson, an employee of the School District, was subsequently admonished over on off-site incident where her children were verbally attacked by Bully 1 and others. Principal Piciullo and a representative of Human Resources chastised Claimant Debra Dawson and advised her that she was to represent the interest of the School District before the well-being of her family and her children's physical and mental well-being. This incident not only happened off school property, but was not on any school/employer affiliated event. A letter of reprimand was placed into Claimant Debra Dawson's employment records and upon information and belief, was the reason why she lost a promotion to a position for which she was the only in-house applicant (the School District

had never opened the position to outside applications before this incident, and Claimant Debra Dawson was "groomed" for the position). As a result, Debra Dawson was left with little choice, but to leave employment, as her right to protect her children outside of South Ocean or the School District was being denied, and affecting her employment opportunity, as well as violate her First Amendment Rights.

55.     On or about April 8, 2024 L.D. had returned to South Ocean after having been on home bound instruction for five weeks. In roughly two hours from when he re-entered the school, L.D. was approached by a fellow student (Bully 8), who questioned where L.D. had been for the last 5 weeks, and why he was even back as no one even cared about L.D. This incident was reported by Claimant Debra Dawson, on April 10, 2024 to Nicole Blum, 8th Grade teacher, and Dean Crabtree. There was no response to the report other than a non-chalant "oh".

56.     L.D. told A.D. about incident. A.D. saw Bully 8 and said that Bully 8 is not to talk to her brother that way ever again. Teacher Blum overheard, and asked A.D. why A.D. said this to Bully 8. Blum chastised A.D and said such phrasing was not Junior National Honor Society Material. Thereafter, Claimant Debra Dawson, upon learning of what happened and of the exchange between Teacher Blum and A.D., explained the situation to Teacher Blum. Teacher Blum did apologize for her reaction to A.D.

57.     Employees of the School District claimed to enforce repercussions for bullying. For example, the Wresting Coach stated, in sum and substance "any bullying would result in a child getting kicked off the team." However, the student responsible for the social media post about A.D. was not removed from the wrestling team, instead the Wrestling Coach said he would talk to the student, but not kick them off the team.

58.     On or about May 16, 2024 L.D. was on class trip including other 7th grades from within the District.  L.D. was approached by a student he did not know.  The student said "hey L.D., Have you been jerking off lately?"

59.	In September 2024, L.D. as the new school year began he was approached by another student, who brought up previous incidents/harassment against L.D. This triggered L.D., and the matter was immediately reported to the School. Upon information and belief, nothing was done about this situation.

60.	In or about November 2024, A.D. entered the girls' locker room in the School. She saw another female student actively cutting herself. A.D. immediately went to the School social worker to report the incident. The School subsequently informed A.D., William Dawson and Debra Dawson that A.D. "did not see what [she] thought [she] saw" and that A.D. should seek counseling. This was despite A.D. being adamant that she was 100% certain of what she witnessed. It is such indifference of the School to the harm of the students suffer that endanger them further, not just L.D. and A.D.

61.	On or about January 10, 2025, A.D., pursuant to a medical medial plan (due to A.D. suffering from depression, anxiety, anorexia after years of bullying and harassment) ate lunch in the nurses office. Thereafter, A.D. went to the lunchroom, to sit with some girls who had earlier that day expressed that they wanted to include A.D. and therefore wanted her to join them during lunch. When A.D. went to the lunchroom to sit with the other girls, said girls completely ignored A.D. and acted as if A.D. did not exist. This triggered A.D.'s anxiety, who then rushed back to the nurse's office. At the nurses office, the nurse attempted to bring A.D. to the guidance counselor, who was not in their office. So the nurse brought, A.D. back to the nurse's office. Thereafter, Erdman entered the nurse's office and berated A.D., without waiting to hear that A.D. was in the throws of an anxiety attack or that the guidance counselor was not in their office. After Erdman's completed her tirade and left, A.D. called her mother to pick her up. Debra Dawson thereafter, called the school from her cellphone number and no one at the school would pick up. Debra Dawson then called the School from using the privacy setting to block her phone number and the call was immediately picked up. When Debra Dawson questioned the School personnel about the reason for not picking up her phone call, no answer was given, despite Debra Dawson

pressing the School personnel, as it involved her daughter's medical issues and could have been a dire emergency.

62.     It is too little too late for L.D. and A.D., who suffered over two years of bullying, harassment, and discrimination due to Patchogue-Medford School District's failure to protect L.D. and A.D. from cruel and relentless bullying and discrimination from peers and school staff.

## CAUSES OF ACTION

### FIRST CLAIM TITLE IX – 20 U.S.C. § 1681
### (Against Defendant Patchogue-Medford School District)

63.     Plaintiffs repeats and realleges each and every allegation the preceding paragraphs as if set forth here.

64.     At all relevant times, L.D. is a student enrolled in schools controlled, operated, and overseen by the District.

65.     At all relevant times, the District received federal financial assistance.

66.     The District owed a duty to protect L.D. from gender-based discrimination, including sexual and gender-based harassment, bullying, intimidation, and a hostile education environment.

67.     The District discriminated against L.D by subjecting him to different treatment on the basis of his gender, including by subjecting him to sexual and gender- based harassment, bullying, intimidation, and a hostile educational environment.

68.     The District failed to prevent, respond to, adequately investigate, and/or appropriately resolve and remedy instances of gender discrimination against L.D., including sexual and gender-based harassment, bullying, intimidation, and a hostile educational environment.

69.     The District was deliberately indifferent to the risk that other students would discriminate against, harass, bully, and intimidate L.D. and subject him to a hostile educational environment.

70.     The District had actual knowledge that other students, as well as staff, were subjecting L.D. to gender-based discrimination, harassment, bullying, intimidation, and a hostile educational environment, but failed to protect L.D.

71.     As a direct and proximate result of the District's unlawful discrimination, L.D. suffered damages.

**SECOND CLAIM**
**Violation of First Amendment to**
**Constitution of the United States of America**

72.     Plaintiffs repeats and realleges each and every allegation the preceding paragraphs as if set forth here.

73.     Upon information and belief, A.D. and L.D. were accosted by their bullies outside of The District or School property and outside of District and School hours, i.e. on a private business property – a movie theater.

74.     Upon information and belief, Debra Dawson engaged in a verbal argument with the bullies of A.D. and L.D., which subsequently came to the attention of the District, for whom Debra Dawson was also employed.

75.     Debra Dawson, in the presence of union representative, was advised that she needed to make a decision, she was to either concern herself with her children or her employment, but not both as she was an employee of the District.

76.     Debra Dawson thereafter quit her employment with the District, as no mother should be asked to chose between her children and their job.

77. The District and the School actions violate the free speech protections afforded to Debra Dawson under the First Amendment to the United States Constitution.

78. As a direct and proximate result of Defendants' unlawful actions Debra Dawson suffered and will continue to suffer harm, including but not limited to humiliation, embarrassment, reputational harm, emotional, physical, and psychological distress, and other damages.

**THIRD CLAIM**
**New York State Human Rights Law, N.Y. Executive Law § 296(6)**
**Against All Defendants**

79. Plaintiffs repeats and realleges each and every allegation the preceding paragraphs as if set forth here.

80. The District is an educational institution as defined by New York Executive Law § 292(40)(c).

81. During all times relevant to this claim, Defendants Piciullo, Crabtree, and Erdman were employed by the District.

82. Defendants Piciullo, Crabtree, and Erdman are not "school officers" within the meaning of N.Y. Education Law § 2 and claims again them are therefore not subject to the requirements of N.Y. Education Law § 3813(1).

83. The District discriminated against L.D., in violation of N.Y. Executive Law § 296(4), by subjecting him to different treatment on the basis of his sexual orientation and gender identity or expression, including by subjecting him to harassment, bullying, intimidation, and a hostile educational environment; by failing to prevent, respond to, adequately investigate, and/or appropriately resolve and remedy instances of unlawful discrimination; and by exhibiting deliberate indifference to the risk that he would be subjected to unlawful discrimination and a hostile educational environment.

84.     Defendants Piciullo, Crabtree, and Erdman aided and abetted the District's unlawful discrimination against L.D. by failing to prevent, respond to, adequately investigate, and/or appropriately resolve and remedy instances of unlawful discrimination, including bullying, harassment, intimidation, and a hostile educational environment on the basis of sexual orientation and gender identity or expression.

85.     As a direct and proximate result of Defendants' unlawful discrimination, L.D. suffered and will continue to suffer harm, including but not limited to loss of educational opportunities, humiliation, embarrassment, reputational harm, emotional, physical, and psychological distress, and other damages.

**FOURTH CLAIM**
**New York State Civil Rights Law §§ 40-c and 40-d**
**Against Defendants Piciullo, Crabtree, and Erdman**

86.     Plaintiffs repeats and realleges each and every allegation the preceding paragraphs as if set forth here.

87.     The acts and omissions by Defendants Piciullo, Crabtree, and Erdman alleged herein subjected L.D. to discrimination and harassment in the exercise of his civil right to education under New York law because of his sexual orientation and gender identity or expression.

88.     The acts and omissions by Defendants Piciullo, Crabtree, and Erdman alleged herein aided and incited unlawful discrimination against and harassment of L.D. by others in the exercise of his civil right to education under New York law because of his sexual orientation and gender identity or expression.

89.     The violations of L.D.'s rights under the New York State Civil Rights Law are the actual direct, and proximate cause of the injuries and damages suffered by L.D. as alleged herein.

## FIFTH CLAIM
## Negligence Against All Defendants

90.     Plaintiffs repeats and realleges each and every allegation the preceding paragraphs as if set forth here

91.     Defendants owed a duty of care to L.D. as a student in the Patchogue-Medford School District.

92.     At all relevant times, Defendants were under a legal duty to adequately supervise L.D. and the rest of the students in their charge at South Ocean-Middle School, and to exercise such care of L.D. and his fellow students as a parent of ordinary prudence would observe in comparable circumstances.

93.     Defendants breached the duty of care that they owed to L.D. by allowing him to be bullied, harassed, and assaulted, failing to provide him with necessary and proper care and supervision, failing to detect and remedy the bullying, harassment, and assault of L.D. by other students, and failing to properly supervise L.D. and the students responsible for bullying, harassing, and assaulting him.

94.     These breaches of Defendants' duty and care proximately caused L.D.'s damages and injuries as described herein.

95.     The District is vicariously liable for the tortious conduct of its employees as alleged herein.

## SIXTH CLAIM
## Negligence Against All Defendants

96.     Plaintiffs repeats and realleges each and every allegation the preceding paragraphs as if set forth here

97.     Defendants owed a duty of care to A.D. as a student in the Patchogue-Medford School District.

98.     At all relevant times, Defendants were under a legal duty to adequately supervise A.D. and the rest of the students in their charge at South Ocean-Middle School, and to exercise such care of A.D. and her fellow students as a parent of ordinary prudence would observe in comparable circumstances.

99.     Defendants breached the duty of care that they owed to A.D. by allowing her to be bullied, harassed, and assaulted, failing to provide him with necessary and proper care and supervision, failing to detect and remedy the bullying, harassment, and assault of A.D. by other students, and failing to properly supervise A.D. and the students responsible for bullying, harassing, and assaulting him.

100.    These breaches of Defendants' duty and care proximately caused A.D.'s damages and injuries as described herein.

101.    The District is vicariously liable for the tortious conduct of its employees as alleged herein.

### SEVENTH CLAIM
### Negligence Against All Defendants

102.    Plaintiffs repeats and realleges each and every allegation the preceding paragraphs as if set forth here

103.    Defendants owed a duty of care to L.D. as a student in the Patchogue-Medford School District.

104.    At all relevant times, Defendants were under a legal duty to adequately supervise L.D. and the rest of the students in their charge at South Ocean-Middle School, and to exercise such care of L.D. and his fellow students as a parent of ordinary prudence would observe in comparable circumstances.

105.    Defendants breached the duty of care that they owed to L.D. by allowing him to be bullied, harassed, and assaulted, failing to provide him with necessary and proper care and supervision, failing to detect and remedy the bullying, harassment, and assault of L.D. by other students, and failing to properly supervise L.D. and the students responsible for bullying, harassing, and assaulting him.

106.    These breaches of Defendants' duty and care proximately caused L.D.'s damages and injuries as described herein.

107.    The District is vicariously liable for the tortious conduct of its employees as alleged herein.

## EIGTH CLAIM
## Unlawful Retaliation by Defendants

108.    Plaintiffs repeats and realleges each and every allegation the preceding paragraphs as if set forth here.

109.    Upon information and belief, Defendants have begun engaging in a pattern and practice of retaliation against Plaintiffs and the minor children.

110.    Upon information and belief, when A.D. witnessed another student engaging in self-harm, and reported same, she was later told in sum and substance that she did not see what she thought she saw. This was not only despite A.D. knowing exactly what she saw, but that Defendants knowing that A.D. has anxiety and this would be a trigger, which it did.

111.    Upon information and belief, in January 2024, A.D. had an incident where some girls convinced her to sit with them during lunch, but only to have them treat her as if she did not exist. While in throes of an anxiety attack, Erdman berated A.D. for being in the nurse's office. Thereafter, A.D. contact her mother. When Debra Dawson attempted to call the School, staff refused to take the call when they saw Debra Dawson's number on the

caller ID, but took said call when it came from a blocked number.

112.    Upon information and belief, Defendants actions constitute retaliation, and
have and are intended to cause harm upon the entire Dawson family.

113.    The District is vicariously liable for the tortious conduct of its employees as
alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as
follows:

    A.  Compensatory damages in an amount to be determined at trial;

    B.  Punitive damages against all Defendants, except the District, in an amount to be
determined at trial;

    C.  An award of reasonable costs and attorneys' fees under 42 U.S.C. § 1988, New
York Executive Law § 297, and/or any other applicable law;

    D.  Pre- and post-judgment interest to the fullest extent permitted by law;

    E.  Punitive Damages to the fullest extent permitted by law

    F.  Any additional relief the Court deems just and proper.

Dated: February 25, 2025
       Patchogue, New York

                    NICOLE M. CARDIELLO, ESQ., P.C.

            By: _____
                    MARC ANDREW KRAMER, ESQ. (4011482)
                    Attorneys for Plaintiff
                    70 Medford Avenue
                    Patchogue, New York 11772
                    (T) 631-207-2500
                    (F) 631-207-2507
                    (E) makramer@cardiellolaw.com

## **VERIFICATION**

STATE OF NEW YORK )
                       ) ss:
COUNTY OF SUFFOLK)

I, WILLIAM DAWSON, am the Plaintiff in the within action. I have read the foregoing VERIFIED COMPLAINT and know the contents thereof. The contents are true to my own knowledge except as to matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

_____
WILLIAM DAWSON

Subscribed and Sworn to before me

on 25ᵗʰ day of ~~JANUARY~~ FEBRUARY 2025

_____
Notary Public

MARC ANDREW KRAMER
Notary Public State of New York
Qualified in Suffolk County
No. 02KR6069692
Commission Expires February 11, 20_26_

## **VERIFICATION**

STATE OF NEW YORK )
                        ) ss:
COUNTY OF SUFFOLK )

I, DEBRA DAWSON, am the Plaintiff in the within action. I have read the foregoing VERIFIED COMPLAINT and know the contents thereof. The contents are true to my own knowledge except as to matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

                                  DEBRA DAWSON

Subscribed and Sworn to before me
on 25th day of ~~JANUARY~~ FEBRUARY 2025

Notary Public

MARC ANDREW KRAMER
Notary Public State of New York
Qualified in Suffolk County
No. 02KR6069692
Commission Expires February 11, 20_26_

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK                    Civil Action No.: 25-cv-1026

WILLIAM DAWSON AND DEBRA DAWSON
on behalf of themselves and their minor son L.D.,
and minor daughter, A.D.,

                         Plaintiff,

        -against-

PATCHOGUE-MEDFORD SCHOOL DISTRICT,
SOUTH OCEAN-MIDDLE SCHOOL,
TIMOTHY PICIULLO, RYAN CRABTREE,
and MARIA DEL PILAR ERDMAN,

                         Defendants.

## **COMPLAINT**

NICOLE M. CARDIELLO, ESQ., P.C.
Attorneys for PLAINTIFFS
70 Medford Avenue
Patchogue, New York 11772
(631) 207-2500

To:

                                    Service is hereby admitted.

                                    Dated:            , 2025

                                    _____

Attorney(s) for

*Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to
practice in the courts of New York State, certifies that, upon information and
belief and reasonable inquiry, the contentions contained in the annexed
document(s) are not frivolous.*

Dated: February 25, 2025         Signature _____
                                            MARC ANDREW KRAMER, ESQ.